IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ASHLEY A. MATCHETT,<br><br>Plaintiff,<br><br>v.<br><br>BLUE WATERS AIR CHARTERS, LLC;<br>VIEQUES AIR LINK, INC;<br>STARR INSURANCE COMPANY;<br>X, Y, Z INSURANCE COMPANY;<br>and ABC CORPORATION, JOHN DOE<br><br>Defendants. | CIVIL No. 21-cv-1252 |

# COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW** the Plaintiff, Ashley A. Matchett, through the undersigned attorneys, and before the Honorable Court respectfully states, alleges, and prays as follows:

## I. THE PARTIES

1. Plaintiff is of legal age, single, a genetics professor and biochemist, and a citizen of Australia with domicile in Lancashire, England.

2. Codefendant, **Blue Waters Air Charters, LLC ("BWA"),** is a domestic for-profit corporation incorporated in the Commonwealth of Puerto Rico with principal place of business in Puerto Rico. BWA was/is the owner, operator, and/or

1

the entity that provided maintenance to the Piper Aztec aircraft bearing Registration number N14181.

3. Codefendant, **Vieques Air Link, Inc. ("VAL"),** is a domestic for-profit corporation incorporated in the Commonwealth of Puerto Rico with principal place of business in Puerto Rico. VAL was/is the owner, operator, and/or the entity that provided maintenance to the Piper Aztec aircraft bearing Registration number N14181.

4. Codefendant, **Starr Insurance Company ("Starr")**, upon information and belief, is an insurance company that had issued one or more insurance policies to cover accidents like the one described in this Complaint. At all relevant times herein, Starr issued one or more insurance policies covering one or more of the previous named defendants for the damages suffered by the Plaintiff as alleged herein.

5. ABC Corporation and/or John Doe are the fictitious names used to identify persons or entities that are the owners, operators, and/or in charge of providing maintenance to the Piper Aztec aircraft bearing Registration number N14181, that contributed to the occurrence of the horrific accident described herein.

6. XYZ Insurance Company is the fictitious name used to identify insurance companies that had issued one or more insurance policies to cover the liability of one or more of the defendants in this case.  Once the identity of said insurance companies is known, the Complaint will be amended to reflect the proper identity of said insurance companies.

7. At the time of the accident described in detail below, all Defendants were either

the administrators, operators, manager(s), owners and/or contractors, which are responsible parties for the Piper Aztec aircraft bearing Registration number N14181 (hereinafter referred to as the "Aircraft"), to include all aspects of its flight operations and the upkeep of the aircraft. Thus, all Defendants and their agents and employees are jointly and severally responsible for the accident suffered by the Plaintiff, as further described in the present Complaint.

## II. JURISDICTION

8. The Court has subject matter jurisdiction to entertain the instant case pursuant to *28 U.S.C. section 1332,* because this is a case or controversy between citizens of different states and the amount in controversy is more than seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

9. Venue is proper in this District pursuant to 28 USC 1391 (a) because all the events or omissions giving rise to the claims alleged herein occurred within this District.

10. As per the facts detailed below, the present Complaint is a personal injury complaint for all the damages suffered by the Plaintiff because of Defendants errors, omissions, and negligence.

## IV. THE FACTS AND DAMAGES

11. At all times prior, concurrent and after the incident, Plaintiff was the registered and managing owner of the Sailing Yacht named FREEBOOTER OF FLEETWOOD" (hereinafter referred to as the "Vessel" or "FREEBOOTER"), a 1999 Dufour 39 CC, UK Registry No. SSR86795, 11.98 meters LOA, 15 gross tonnage, and was anchored in the port of San Juan, Puerto Rico, at the time of the crash.

12. At all times prior and concurrent with the incident, Plaintiff was residing in FREEBOOTER while she was anchored in San Juan Bay.

13. FREEBOOTER is a performance cruiser/racer with high quality standing and running rigging. The Vessel was in excellent condition until the day of the incident described herein.

14. On June 2, 2020, about 1333 Atlantic Standard Time, a twin-engine Piper Aztec, PA-23-250, N14181, was involved in an accident during a takeoff from Fernando Luis Ribas Dominicci Airport (TJIG), San Juan, Puerto Rico. The pilot and one passenger died in the accident, while another passenger sitting in the right front seat was seriously injured.

15. At the time of the accident, Plaintiff was aboard FREEBOOTER which was anchored in the Caño San Antonio, Anchorage Area D on the nautical charts of San Juan Bay.

16. Plaintiff was in the saloon area below deck when Piper Aztec aircraft suddenly crashed into his Vessel.

17. The impact of the crash was of such magnitude that the Vessel was knocked over, the mast, boom, and rigging were all broken and strewn across the deck of the Vessel.

18. The force of the impact was such that Plaintiff suffered contusions to his body, hitting his face and mouth, and chipping and losing a tooth.

19. Plaintiff, after gaining his awareness, went above deck and saw that the Piper Aztec aircraft had crashed into his Vessel, and the plane was nearby in the water.

20. Plaintiff immediately dived off his Vessel and swam towards the Aircraft that was sinking at a prodigious speed.

21. Plaintiff saved the life of the person in the right front seat of the Aircraft who was bleeding from mouth and head, in shock, and shouting. Plaintiff pulled him off the plane and away before getting sucked in the downforce of the sinking plane and dragged the injured person on the water surface back to his Vessel.

22. While rescuing the passenger, Plaintiff was able to see that there were two other persons inside the Aircraft, but Plaintiff was not able to rescue them because the plane was quickly sinking.

23. As a direct result of the accident, Plaintiff's Vessel suffered considerable damages. The value of the damages suffered by the Vessel are reasonably estimated in a sum of not less than **EIGHTY-TWO THOUSAND DOLLARS ($82,000.00)**.

24. As a direct result of the accident, Plaintiff has also had to incur in unwanted economic expenses. Plaintiff unwanted expenses are reasonably estimated in a sum of not less than **TWENTY-FIVE THOUSAND DOLLARS ($25,000.00)**.

25. As a direct result of the accident, Plaintiff suffered contusions to his body, hitting his face and mouth, chipping and losing a tooth. The value of Plaintiff's physical injuries is estimated at not less than **ONE HUNDRED THOUSAND DOLLARS ($100,000.00).**

26. Because of the accident, Plaintiff is unable to perform various activities and other pleasures of life, to include his hobby and lifelong passion, sailing, an activity that he was fully able to perform and enjoy prior to the accident.

27. As a direct result of the accident, Plaintiff was to witness two persons die in his presence, people he wanted to save, but could not while he was saving another passenger's life. This tragic accident has caused and will permanently continue to cause Plaintiff pain and suffering, anxiety, emotional distress, and mental and moral anguish. The value of these damages is estimated at not less than **FIVE HUNDRED THOUSAND DOLLARS ($500,000.00)**

## V. LIABILITY

28. Because of the accident caused by the negligence of Defendants, Plaintiff has and will continue to suffer mental anguish and physical injuries.

29. The accident resulting in the serious and severe damages to Plaintiff was caused by the direct and exclusive fault and negligence of the Defendants.

30. Defendants are liable to the Plaintiff for having acted as negligent owners, performed faulty maintenance and/or repair work to the Aircraft, and failing to use reasonable care in the flight testing and re-certification of the Aircraft, which failure was inherently, imminently, and unreasonably dangerous to the safety of the pilot, passengers, and the public.

31. Prior to the two takeoff attempts, Defendants knew or should have known that the multi-engine Aircraft was having left engine problems, and loss of power. The left-engine loss of thrust when the plane was airborne resulted in two immediate aerodynamic effects: (1) an initial effect is yawing that occurs due to the asymmetry of the thrust line; and (2) the second effect is roll that occurs when the aircraft continues to yaw towards the failed engine resulting in a decrease in lift and a yaw-

induced roll towards the failed engine. Soon thereafter the nose pitched lower, and the plane crashed into the channel.

32. Defendants pilot was negligent by attempting to fly the Aircraft knowing that the left engine was experiencing problems and loss of power during takeoff.

33. Defendants, prior to the second takeoff, had already aborted at least one takeoff as a direct consequence of left engine loss of power, which was yawing the plane to the left.

34. While still on the ground before the second takeoff, Defendants knew that the Aircraft's left engine was having difficulty to get it started.

35. While knowing of the Aircraft's loss of power from the left engine during a first takeoff, Defendants continued with the flight test and in the second takeoff immediately crashed into Plaintiff's Vessel.

36. Defendants, knowing the Aircraft's first left-engine failure, continued to attempt a second takeoff in a populated area.

37. Defendants Pilot is liable for the damages caused by his negligence.

38. Defendants Pilot is an employee of VAL and/or BWA and/or was duly authorized by Defendants to pilot their Aircraft.

39. Defendants are jointly and severally liable for the damages caused by the Pilot's negligence for its vicarious responsibility.

40. All the above described physical and emotional damages are directly related to the airplane crash. All Defendants are jointly and severally liable for the damages caused to the Plaintiff.

41. All Defendant insurance companies are jointly and severally liable for the damages caused by VAL, BWA, and Defendants Pilot by virtue of their insurance policies.

42. Pursuant to Articles 20.010 and 20.030 of the Puerto Rico Insurance Code, 26 PRLA 2001 & 2003, Starr Insurance Company and XYZ Insurance Company are directly responsible to Plaintiff for the damages caused by the negligence of their insured.

43. In addition to the above alleged and claimed damages, recoverable under the Civil Code of Puerto Rico, the Court is empowered to compensate the Plaintiffs for Court's costs and other expenses incurred in this litigation, plus interest. Plaintiff claims them as well.

44. Plaintiff demands a trial by jury of all controversies of this case.

**WHEREFORE,** it is respectfully requested that this Honorable Court enter judgment for plaintiff, for the relief demanded in the complaint with the imposition of reasonable attorneys' fees and costs.

In San Juan, Puerto Rico, this 1st day of June, 2021.

*S/ Eduardo R. Jenks*
Eduardo R. Jenks
USDC PR# 300110
**JENKS CARBALLEIRA LAW OFFICE**
PMB 565, 1353 Luís Vigoreaux Ave.
Guaynabo, PR 00966
Tel. (787)439-3980
Email: edjenks@yahoo.com

*S/ Paul E. Calvesbert*
Paul E. Calvesbert
USDC-PR # 118503
**CALVESBERT LAW LLC**
PMB 508, 1353 Luis Vigoreaux Ave.
Guaynabo, PR 00966

8

Tel. (787) 413-4510
E-mail: pcalvesbert@calvesbertlaw.com